UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARMEN MANUKIAN,

Plaintiff,

*– against –*

PROCIDA CONSTRUCTION CORP. NEW YORK,

Defendant.

**OPINION & ORDER**

23 Civ. 10249 (ER)

RAMOS, D.J.:

Armen Manukian, proceeding *pro se*, brought this action against Procida Construction Corp., alleging claims of unpaid wages and discrimination. Doc. 2. On September 5, 2025, the Court granted Procida's motion for summary judgment on all of Manukian's claims. Doc. 33. Before the Court is Manukian's motion for reconsideration. Doc. 35. For the reasons set forth below, the motion is DENIED.

## I. Background

### A. Factual Background

The Court assumes familiarity with the underlying facts of this action, which are set forth in the Court's September 5, 2025 Opinion and Order granting Procida's motion for summary judgment. *Manukian v. Procida Construction Corp. New York*, No. 23-cv-10249 (ER), 2025 WL 2578107 (S.D.N.Y. Sept. 5, 2025) (the "September 2025 Opinion"). The facts relevant to the instant motion are set forth below.

Manukian was born in Armenia, is a citizen of Ukraine, and was raised in Ukraine and Russia. *Id.* at 1. He emigrated to the United States on June 20, 2014. *Id.* [redacted]

Manukian speaks some English, often relying on interpreters and translation software to communicate. *Manukian*, 2025 WL 2578107 at *1. He rates his English reading and writing as a 3 or 4 out of 10, and he can speak some English conversationally. *Id*. Manukian states that he rates his communication with his "team" a 9 out of 10, and that his English abilities sufficiently allow him to communicate at work. *Id*.

In June 2018, Manukian was hired by CW Metals, Inc. as an iron worker. *Id*. He first worked at a jobsite known as "153 Sherman," where he was paid in cash. *Id.* A few weeks later, he was sent to another jobsite referred to as "Tres Puentes." *Id*. Manukian testified that, at Tres Puentes, he received an orientation where an individual in a Procida uniform promised him an hourly wage of $65.25. *Id*. The orientation was conducted in English. *Id*. Procida states that Manukian was initially employed by CW Metal, who "might have been hired by Procida as a subcontractor," and he was not employed by Procida until August 2018. *Id*. It also states that the purported orientation was provided by CW Metal, not Procida. *Id*. Following the orientation, Manukian worked at Tres Puentes—which Procida states was a prevailing wage jobsite[1]—where he was paid approximately $90 per hour. *Id*. at 2.

Manukian entered into an employment contract with Procida in August 2018. *Id*. Procida states that at the beginning of Manukian's employment, it provided him with a Notice and Acknowledgment of Pay Rate and Payday (the "Notice"), which stated that Manukian would be paid $18 per hour as a laborer. *Id*. at 3. On the Notice, Procida

[1] "Prevailing wages are the wages that prevail in a locality for a day's work in a particular trade or occupation." *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 608 n.1 (S.D.N.Y. 2016) (citing N.Y.L.L § 220(3)(a)). "The prevailing rate is determined by the commissioner of labor or city comptroller." *Hajny v. Best Roofing of New Jersey, Inc.*, No. 11 Civ. 00173, at *6 (LLS), 2011 WL 2493737 (S.D.N.Y June 22, 2011) (citing, inter alia, N.Y.L.L. § 220(5)). New York laws require that workers on public works projects receive prevailing wages. *Id.* (citing N.Y.L.L. §§ 220(3), 220(5)). "The laws also require that contracts between a contractor and a public entity for public work provide that the contractor's workers will receive not less than the prevailing wage." *Id.* (citing, inter alia, N.Y.L.L. § 220(3)).

handwrote Manukian's name on the "Print Employee Name" line. Doc. 38-10. The "Employee Signature" line is blank. *Id*. Manukian also did not sign anywhere else on the Notice. *Manukian*, 2025 WL 2578107 at *3. He asserts that he also did not fill it out. *Id*. He claims that he first saw the Notice in 2024, not 2018. *Id*.

Procida provides that Manukian worked on six jobsites during his employment, some for stints as short as a single day or a few weeks: (1) 2035 Newbold in Westchester, New York; (2) 2044 Westchester Avenue; (3) 105 South 5th Street; (4) 1912 1st Avenue, also known as "the Gilbert"; (5) 143 West 108th Street; and (6) 917 Westchester Avenue, also known as "TLK." *Id*. Manukian did not recall working at either of 105 South 5th Street or 143 West 108th Street. *Id*. But he testified that at the rest of the jobsites, he was paid at a rate of $18 per hour. *Id*. at 3–4. Manukian last worked for Procida in February 2019. *Id*. at 4.

Although Manukian asserts claims of discrimination based on his national origin, when asked at his deposition whether anyone at Procida ever expressed animus toward him because of his immigration status, he responded "[n]o animosity, no." *Id*. at 5. Manukian also responded in the negative when asked whether anyone made comments about his national origin, and whether he had any witnesses to support his discrimination claims. *Id.* Manukian states in his counterstatement to Procida's Rule 56.1 statement that, while "[n]o one made any direct comments to [him] about his background, . . . people constantly asked where he was from." *Id*. Manukian states that he texted his concerns about discrimination to Joseph. *Id*. The record includes screenshots of texts that Manukian exchanged with a Joseph R. Figueroe on February 10, 2019, in which Manukian expressed that Procida was not paying him the amount he deserved, and that he was misunderstood and treated improperly because of his nationality, and because he is not American. *Id*. Manukian testified at his deposition that when Procida hired him, Procida knew that he was not born in the United States. *Id*. He also asserts that he

shared his immigration records with Procida during the course of his employment.[2] Doc. 38-19.

**B. Procedural History**

On November 4, 2022, Manukian filed a complaint against Procida in state court, alleging that between July 14, 2019 and February 10, 2019, Procida did not pay him $65.25 per hour as he had been told at orientation, and that he was discriminated against. *Id*. Procida answered the complaint in state court on March 15, 2023. *Id*. at 6. On October 13, 2023, it served a demand for a Bill of Particulars ("BOP") on Manukian and, on October 24, 2023, Manukian provided Procida with his BOP. *Id*. On November 21, 2023, Procida removed the case to this District pursuant to 28 U.S.C. §§ 1331, 1441, on grounds that, based on Manukian's BOP, Manukian was asserting federal discrimination claims. *Id*. On January 9, 2024, Manukian filed a statement with this Court to supplement his allegations. *Id*. On August 13, 2024, Manukian was deposed with the assistance of a Russian interpreter. *Id*. Manukian claims that the interpreter was Ukrainian and the wallpaper of the interpreter's phone depicted armed Ukrainian soldiers fighting Russians.[3] Doc. 38 at 5.

On December 9, 2024, Procida moved for summary judgment to dismiss all of Manukian's claims with prejudice, which was granted by the Court on September 5, 2025. Doc. 33. A Clerk's Judgment was entered, which closed the case. Doc. 34. Manukian filed a letter on September 9, 2025, opposing the Clerk's Judgment. Doc. 35. The Court construed the letter as a motion for reconsideration and entered a briefing schedule for the motion. Doc. 36. Procida responded to the motion on September 24,

---

[2] In support of the instant motion, Manukian presents [redacted] Viewing the statement in the light most favorable to Manukian, the Court construes it as an allegation that Procida was given access to Manukian's immigration records.

[3] Manukian does not challenge the accuracy of the translation provided during his deposition. Doc. 38.

and Manukian replied on October 1, 2025. Docs. 37, 38. On July 14, 2026, Manukian filed a statement, restating his claims and updating the Court on his living and working conditions. Doc. 43.

Manukian states that he has thus far been unable to retain an attorney in this action despite diligent efforts to secure legal representation. Doc. 38 at 3; Doc. 43.

## II. LEGAL STANDARD

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A motion for reconsideration should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (citation omitted). The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

## III. DISCUSSION

In Manukian's submissions for the instant motion, he fails to engage with the Court's reasoning in the September 2025 Opinion. Docs. 35, 38. Instead, he restates his version of the story: Procida failed to pay him the promised hourly wage and discriminated against him based on his immigration status.[4] *Id*. Moreover, he alleges

[4] Manukian argues that Procida started to treated him "harshly" upon learning his immigration status and for the first time in his reply memorandum, that "his life was in danger from criminal Armenians and Russian-Ukrainian speakers." Doc. 38 at 1.

that: (1) it was a group of Armenian criminals who directed Procida to mistreat him; (2) Procida filled out the Notice themselves and signed it for him; (3) Procida colluded with the City of New York (the "City") to prevent attorneys from representing him; and (4) Procida and the City hired a Ukrainian translator at his deposition out of bad faith. Doc. 38. Except for the allegation that Manukian did not sign or fill out the Notice, these assertions were never presented to the Court in connection with the underlying motion for summary judgment. Docs. 28, 29.

None of these allegations alter the Court's decision. In its September 2025 Opinion, the Court acknowledged and considered the fact that Manukian did not sign or fill out the Notice but granted the motion based on the other evidence presented. *Manukian*, 2025 WL 2578107 at *3, *7–*8. Moreover, contrary to what Manukian alleges, Procida did not sign the Notice for him. Doc. 38-10. The "Employee Signature" line was left blank. *Id*.

In addition, as a threshold matter, the newly raised allegations cannot be considered. "Except where a movant is relying on new facts that could not have been previously discovered or newly promulgated law, additional facts or new legal theories cannot be asserted by way of a motion for reconsideration." *Bloomfield Investment Resources Corp. v. Daniloff*, No. 17-cv-4181 (VM), 2021 WL 2310446, at *2 (S.D.N.Y. June 7, 2021) (quoting *Albury v. J.P. Morgan Chase*, No. 03-cv-2007, 2005 WL 1653939, at *3 (S.D.N.Y. July 14, 2005)). Manukian does not allege that any of these facts are newly discovered or couldn't have been raised in his opposition to Procida's motion for summary judgment. Therefore, the motion for reconsideration may be denied on this basis alone.

Even if considered on their merits, the newly raised allegations would still fail for not being supported by the record. *See Bobbit v. Marzan*, No. 16-cv-2042 (AT), 2020 WL 5633000, at *3 (S.D.N.Y. Sept. 21, 2020) (holding that a party may not avoid summary judgment by relying solely on conclusory allegations that are unsupported by facts). In

support of his argument that Procida mistreated him under the direction of a group of Armenian criminals, Manukian presents [redacted] However, even if Manukian [redacted] he fails to establish that [redacted] or that his immigration status was a cause of his alleged underpayment and termination, or that Procida colluded with the organized crime groups. *See Manukian*, 2025 WL 2578107 at *8–*9.

Similarly, Manukian's allegation that Procida and the City prevented attorneys from representing him is not supported by the record. In support of this allegation, Manukian presents: (1) a letter where he recounts his experience in the U.S. to the New York City Office of the Comptroller Claims and Adjudication; (2) flyers of legal aid organizations; and (3) text communication with an attorney where he describes his claims and seeks legal representation. Doc. 38-9. He also argues that Procida and the City hired a Ukrainian translator for his deposition out of bad faith. Doc. 38 at 5. He claims that the wallpaper of the translator's phone depicted armed Ukrainian soldiers fighting Russians and he is considered Russian in the Slavic world. *Id*. However, none of these assertions give rise to a reasonable inference that Procida and the City obstructed his access to legal representation.

## IV. CONCLUSION

For the foregoing reasons, Manukian's motion for reconsideration was DENIED.

It is SO ORDERED.

Dated: July 21, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.